WARRENTON CAMPUS SHOPPING CENTER, INC., Appellant,

v.

Mark ADOLPHUS, Charles F. Dufour and Steve Wasserman, d/b/a Warrenton Campus Associates, Respondents.

No. 56611.

Missouri Court of Appeals, Eastern District, Division Five.

April 3, 1990.

Jonathan Lloyd Downard, Union, for appellant.

Thomas G. Berndsen, Becker, Dufour & Yarbrough, St. Louis, for respondents.

DOWD, Presiding Judge.

Plaintiff appeals the jury's denial of its petition for money due under contract. We affirm.

The facts of the case, viewed in the light most favorable to the jury verdict, are as follows. Appellant, Warrenton Campus Shopping Center, Inc., and respondents, three individuals doing business as Warrenton Campus Associates, entered into a written real estate sales contract concerning a shopping center. Appellant dealt with respondents through appellant's employee Fran Vogt. Ms. Vogt was the only person with whom respondents communicated concerning the sale. The contract provided that respondents had the right to inspect the premises and cancel the contract if dissatisfied with the property. Because some rental payments in the shopping center were based on a percentage of the tenant's profits and were only computed once a year, the contract also contained a provision entitling appellant to a pro-rata share of these payments. That provision required appellant to assign the leases to respondents and required respondents to remit to appellant $1/12$ of each yearly rental payment for each month of the year appellant had owned the property.

When respondents inspected the premises, they discovered that the roof of the shopping center needed repair. Respondents sent a letter to Ms. Vogt stating that they would not accept the property in that condition under the terms of the sale contract. Ms. Vogt and respondents then negotiated a compromise where respondents would accept the property with the faulty roof and appellant would forego its pro-rata share of future rents. The record does not reveal any written manifestation of this agreement. The sale was subsequently closed and appellant signed an assignment of the leases to respondents. The record does not reveal that the assignment or any other closing document made mention of the pro-rata rent agreement.

When the rents fell due a few months later, appellant requested that respondents pay it a pro-rata share as provided under the sale contract. Respondents refused. Appellant then filed suit against respondents seeking to recover this amount which it computed as $21,232.42. Appellant contended that its officers and board were unaware of any agreement to forego the pro-rata rent and that Fran Vogt did not have authority to make such an agreement on its behalf. Ms. Vogt did not testify. Respondents replied that the agreement to waive the pro-rata rent was entered into as described above. The jury found in favor of respondents and this appeal follows.

Appellant first argues that the trial court erred in permitting certain hearsay evidence. That evidence was the testimony of respondent Charles Dufour concerning statements made by Ms. Vogt about the waiver of the pro-rata rents. Appellant objected to these statements at trial but the court allowed them as admissions against interest made by an employee.

Admissions against interest made by an employee are admissible against the employer if the admissions are made in the scope of the employee's duties and the employee has some executive capacity. *Schultz v. Webster Groves Presbyterian Church Ass'n*, 726 S.W.2d 491, 497 (Mo. App.1987). When an employer creates an appearance of power in the employee such that third parties reasonably believe the employee can communicate for the employer, the scope of authority necessary for this exception to the hearsay rule has been established. *Gary Surdyke Yamaha, Inc. v. Donelson*, 743 S.W.2d 522, 524 (Mo.App. 1987).

The case of *Rusk Farms, Inc. v. Ralston Purina Co.*, 689 S.W.2d 671 (Mo. App.1985), is illustrative. Rusk and Ralston entered into a "turkey firm purchase contract." Ralston communicated with Rusk through Ralston's employee McEver. Rusk contacted McEver concerning a proposed change in the contract. McEver told

Rusk he would try to get approval for the change and subsequently told Rusk approval had been granted. At trial, Rusk was allowed to present "hearsay" testimony of McEver's statements. This court held that the testimony fell under the above hearsay exception. *Id.* at 678. Even though McEver did not have authority to change the contract, the testimony was allowable because he did have authority to negotiate the agreement and Ralston created the impression that McEver spoke for the company. *Id.*

The case at bar is very similar. Fran Vogt was appellant's office manager who was responsible for handling the negotiations between the parties. Appellant gave the impression that Fran Vogt spoke for it and respondents could reasonably believe that Ms. Vogt communicated appellant's acceptance of the proposed modification to the contract. Even assuming that Ms. Vogt had no authority to change the contract, it is clear that she had authority to negotiate the contract and that is sufficient to invoke this exception to the hearsay rule.

Appellant's second point relied on claims the trial court erred in allowing parol evidence. Specifically, it claims the evidence of any waiver of the pro-rata rent provision constituted parol evidence.

■ The parol evidence rule prohibits use of oral evidence to contradict or change the terms of a written, unambiguous and complete contract absent fraud, common mistake, accident or erroneous omission. *Norden v. Friedman*, 756 S.W.2d 158, 163 (Mo. banc 1988). The rule only prohibits evidence of contrary agreements made prior to or contemporaneously with the contract; it does not prohibit evidence of agreements entered into *after* the contract was executed. *George F. Robertson Plastering Company v. Magidson*, 271 S.W.2d 538, 541 (Mo.1954). Thus, the parol evidence rule does not apply where a party admits the terms of the contract existed as written, but attempts to show the contract

has been abrogated or replaced by a subsequent agreement. *Id.*

■ That is precisely what respondents attempted to do here. They do not claim the sales contract failed to reflect their original agreement. They merely claim that a subsequent agreement overrode the terms of that contract. Because the instructions and closing arguments are omitted from the record on appeal, we are unable to determine precisely the theory respondent's used as a defense. We note that contracts required to be written under the statute of frauds, including land sale contracts, § 432.010, RSMo 1986, may not be modified orally. *Chandler v. Rosewin Coats, Inc.*, 515 S.W.2d 184, 188 (Mo.App. 1974). Executory land sale contracts may be rescinded orally, however, and such contracts are considered executory where legal title has not been transferred. *Smith v. Mohan*, 723 S.W.2d 94, 97–98 (Mo.App. 1987).

■ Thus, respondents could not show the sales contract had been modified, but they could show that it had been rescinded and a new contract formed.[1] Absent a written manifestation, this new contract was not legally enforceable, but since it was in fact executed, that lapse is moot. Similarly, respondents could have argued that they formed a new and separate agreement where respondents agreed to forego their option to avoid the contract in return for appellant's promise not to seek payment of the pro-rata rents. Such a contract would not fall within the statute of frauds.

It is clear that the trial court committed no error in admitting the evidence because it did not violate the parol evidence rule.

The judgment is affirmed.

SIMON, C.J., and JOSEPH J. SIMEONE, Senior Judge, concur.

---

1. Appellant notes at one point that the sale contract provided for written notice of recission and argues that this was the only way to rescind the contract. Parties to a contract, however, cannot agree to deprive themselves of the power to alter or rescind the contract by future agreement. 3A Corbin on Contracts § 763 p. 531.