

# In the
# Missouri Court of Appeals
# Western District

STATE OF MISSOURI,

                **Respondent,**

v.

MILAS W. MORSE,

                **Appellant.**

**WD78403**

**OPINION FILED:**

**May 10, 2016**

### Appeal from the Circuit Court of Jackson County, Missouri
### The Honorable James Dale Youngs, Judge

### Before Division Three:
### Gary D. Witt, P.J., James Edward Welsh, and Anthony Rex Gabbert, JJ.

Milas Morse appeals the circuit court's judgment, following a bench trial, convicting him of first-degree assault and armed criminal action. We affirm.

### Background

In June 2013, the State charged Morse, as a persistent offender, with one count of first-degree assault, serious injury (§ 565.050, RSMo[1]) and one count of armed criminal action ("ACA") (§ 571.015.1), for knowingly stabbing Trenton George with a dangerous instrument, causing serious physical injury.

---

[1]Statutory references are to the Revised Statutes of Missouri (RSMo) 2000, as updated by the 2012 Cumulative Supplement.

Morse waived his right to a jury trial in exchange for the State's agreement that, if convicted of the class A felony of first-degree assault, serious injury,[2] his sentence would be limited to the punishment designated for a class B felony. The circuit court heard the case on December 2, 2014.

Viewed in the light most favorable to the verdict,[3] the evidence at trial revealed that both Morse and Trenton George had previously been in a romantic relationship with Amber Smith. Morse and Smith had a child together, and Morse owed Smith several thousand dollars in back child support. On June 1, 2013, George and Smith were riding together in Smith's vehicle, and, according to George, he was trying to "patch up" their relationship. Smith was driving and George was in the front passenger seat. Smith's child and another adult were in the back seat.

During this car ride, Smith was talking to Morse on the telephone, and a heated argument ensued when she told Morse that George was with her. Morse and George had a history of animosity and had previously argued about the child support that Morse owed, with George telling Morse at one point that he "owed him for child support 'cause I took care of your kid." George loudly reiterated that statement while Smith was talking to Morse on the phone the day of the assault. George and Morse then engaged in a loud and expletive-laden argument, via Smith's phone, about the child support and other things.

Morse told Smith that he was walking along Truman Road. Smith and George soon spotted Morse as they drove along Truman Road. When Morse walked in front of Smith's car, George told Smith to hit him. Morse then threw an open can of beer into the passenger-side window and beer splattered into the car and onto George. George testified that Morse then

<hr>

[2]"Assault in the first degree is a class B felony unless in the course thereof the actor inflicts serious physical injury on the victim in which case it is a class A felony." § 565.050.2.

[3]*See State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009).

walked up to the passenger-side window carrying a six-inch fixed-blade knife in his right hand. George told Smith to "drive off." Smith testified that she wanted to pull over to a nearby parking lot, but they were stopped at a red light. George testified that Morse then "pulled back like he was going to lunge and stab me." George kicked open the passenger door to stop Morse from stabbing him and to get out and confront Morse. Morse pushed on the car door to prevent George from getting out of the car.

When George did get out, Morse stabbed him in the right knee. George swung at Morse, and the two men fought, ending up in a nearby parking lot. When George exclaimed that he had been stabbed, Morse apologized and said that he had been smoking "meth" for five days. Morse asked George not to call the police, but George yelled to nearby pedestrians to call the police because he had just been stabbed. By this time, Smith had parked her vehicle in the parking lot, and George "hopped" over to the car. Morse fled the scene, and George called 911.

Officer Michael Zaring and four other officers soon arrived, and Zaring saw that George had blood on his jeans. The officers searched for Morse but were unable to find him. George was taken by ambulance to Truman Medical Center. He testified that he underwent surgery for lacerated tendons and muscle tissue that was removed due to gangrene, lost twenty percent of his calf, and continues to have difficulty walking, being on his feet, and working as a painter.

About five months later, Morse was picked up and questioned by Detective John Cutcliff. Morse told Cutcliff that he had blacked out and did not remember whether he had a knife, but if he did, it would have been a small knife. No knife was ever found.

In his closing argument, Morse's attorney asserted that Morse acted in self-defense, and, alternatively, that Morse was guilty only of second-degree assault because he acted "recklessly" in causing George's injury. The circuit court found Morse guilty as charged, holding that the

3

State established beyond a reasonable doubt that Morse did not act in lawful self-defense. The court sentenced Morse to concurrent terms of twelve years for assault and five years for ACA.

**Discussion**

Morse raises two points on appeal, claiming that the circuit court erred in denying his motion for acquittal of first-degree assault because the evidence was not sufficient to prove his guilt beyond a reasonable doubt. In Point I, Morse contends that the evidence supported his claim that he acted in self-defense in stabbing George. In Point II, he argues that the evidence supported a conviction only for second-degree assault because the evidence showed that he acted under the influence of sudden passion or, alternatively, that he acted recklessly.

In reviewing the sufficiency of the evidence, we accept as true all evidence favorable to the State and disregard all evidence and inferences to the contrary. *State v. Crawford*, 68 S.W.3d 406, 407-08 (Mo. banc 2002). Our review is "limited to determining whether there is sufficient evidence from which a reasonable [fact-finder] might have found the defendant guilty beyond a reasonable doubt." *Id*. at 408. When reviewing sufficiency of the evidence to support a criminal conviction, we do not act as a "super juror" with veto powers; rather, we give great deference to the trier of fact. *State v. Nash*, 339 S.W.3d 500, 509 (Mo. banc 2011). We "will not weigh the evidence anew since the fact-finder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case." *Id*. Here, the Appellant wants this Court to ignore our standard of review, as set forth above, and to view the facts in the light most favorable to him.

A person commits first-degree assault if he "attempts to kill or knowingly causes or attempts to cause serious physical injury to another person." § 565.050.1. If "the actor inflicts serious physical injury," the crime is a class A felony. § 565.050.2. Morse claims in both of his

4

points that the evidence was insufficient to establish beyond a reasonable doubt that he acted "knowingly." "A person 'acts knowingly' . . . (1) [w]ith respect to his conduct or to attendant circumstances when he is aware of the nature of his conduct or that those circumstances exist; or (2) [w]ith respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result." § 562.016.3. "Intent, as an element of assault, is generally not susceptible of direct evidentiary proof and may be established by circumstantial evidence or inferred from surrounding facts." *State v. Polson*, 145 S.W.3d 881, 888 (Mo. App. 2004). "The relevant circumstances to be considered include [the defendant's] conduct before the act, the act itself, and [the defendant's] subsequent conduct." *Id*. It is "presumed that a person intends the natural and probable consequences of his acts." *Id*.

The evidence at trial showed that, while Smith and George were stuck in traffic, Morse walked in front of the car, threw a beer can at the car, and then approached the front passenger-side window, where George was sitting. Morse, who was carrying a large fixed-blade knife, came up to the window and began to "lunge" at George with the knife. George pushed the door open to get out and defend himself, but before he could get out, Morse stabbed him in the knee. Although no knife was found, the trier of fact could reasonably conclude that Morse had a knife, since George was able to describe the knife in detail and was stabbed in the knee.

Morse's conduct of approaching George and stabbing at him with a weapon that is fully capable of inflicting serious injury supports a reasonable inference that he knowingly acted with the intent to inflict such injury. *See id*. The fact that Morse actually caused[4] serious physical injury further supports that inference, given that such an injury was a "natural and probable

---

[4]The State presented evidence, via George's testimony, that Morse had inflicted serious physical injury. "'Serious physical injury' means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body." § 565.002(6)).

5

consequence" of his actions. *See id*. Morse's conduct after the attack provided additional indirect evidence of his intent. After stabbing George, Morse asked George not to call the police and then fled the scene. "A permissible inference of guilt may be drawn from acts or conduct of an accused subsequent to an offense if they tend to show a consciousness of guilt by reason of a desire to conceal the offense or [the] accused's role therein." *Id*. at 889. Morse's actions showed not only his desire to conceal the crime, but also his role in it.

In sum, the State presented sufficient evidence for the court to have concluded beyond a reasonable doubt that Morse acted "knowingly," in that he was aware of the nature of his conduct and was aware that his actions were "practically certain" to cause serious physical injury.

In ***Point I***, Morse argues that the evidence supported his claim of self-defense. Section 563.031.1 authorizes a person to use physical force "when and to the extent [he] reasonably believes such force is necessary to defend from what [he] reasonably believes to be the use or imminent use of unlawful force by the other person." *State v. Westfall*, 75 S.W.3d 278, 282 (Mo. banc 2002). "This defense is not available . . . if the defendant was the initial aggressor, unless he withdrew from the conflict." *State v. Hughes*, 84 S.W.3d 176, 179 (Mo. App. 2002); § 563.031.1(1). "An initial aggressor is one who first attacks or threatens to attack another." *Id*.

Here, the evidence showed that Morse first threw a beer can at Smith's car. Morse then approached the car wielding a large knife and began to "lunge" at George. When George got out of the car, Morse stabbed him in the knee and then the fistfight ensued. Based on this, there was sufficient evidence from which the fact-finder could reasonably conclude that Morse was the initial aggressor, that he did not retreat but instead continued to fight, and that it was George, not Morse, who had to defend himself. Thus, the circuit court did not err in rejecting Morse's claim that he was not guilty of assault because he was acting in self-defense. Point I is denied.

6

In **Point II**, Morse contends that the circuit court erred in convicting him of first-degree assault rather than second-degree assault because the evidence showed that he acted "under the influence of sudden passion" or acted "recklessly." A person commits second-degree assault if he "[a]ttempts to kill or knowingly causes or attempts to cause serious physical injury to another person under the influence of sudden passion arising out of adequate cause" or "[r]ecklessly causes serious physical injury to another person."[5] § 565.060.1(1), (3).

Section 565.002(7) defines "sudden passion" as "passion directly caused by and arising out of provocation by the victim . . . which passion arises at the time of the offense and is not solely the result of former provocation[.]" "Adequate cause" is "cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control[.]" § 565.002(1).

The evidence in this case showed that the physical altercation between Morse and George was the result of the earlier argument between them regarding Morse's unpaid child support. But "[w]ords alone, no matter how offensive or insulting, are not sufficient to show adequate provocation." *State v. Battle*, 32 S.W.3d 193, 197 (Mo App. 2000). Thus, the earlier argument could not support Morse's claim that he was acting under the influence of "sudden passion for adequate cause." Consequently, the circuit court did not err in disregarding any suggestion of sudden passion and finding Morse guilty of first-degree (rather than second-degree) assault.

We have already determined that the circuit court reasonably could have found that Morse acted "knowingly" in assaulting George and causing serious physical injury, in that Morse

[5]Morse's suggestion that *State v. Oliver*, 291 S.W.3d 324 (Mo. App. 2009); *State v. Hannah*, 337 S.W.3d 114 (Mo. App. 2011); and *State v. Nunley*, 353 S.W.3d 440 (Mo. App. 2011), are so factually similar to his case that they prove that he was "guilty [only] of second-degree assault" ignores our standard of review. In those cases, the fact-finder found the defendant guilty of second-degree assault, and the convictions were affirmed. Based on the facts in this case, the court found Morse guilty of first-degree assault. Although the cases may have similarities, we do not reweigh the evidence; rather, we assess only whether there was sufficient evidence for a reasonable juror to find the defendant guilty beyond a reasonable doubt. *See Crawford*, 68 S.W.3d at 408.

was aware of the nature of his conduct and aware that his actions were "practically certain" to cause serious physical injury.  Thus, we need not address Morse's claim that the evidence, instead, showed that he acted merely "recklessly."[6] § 562.016.  Point II is denied.

Although there was considerable conflicting evidence in this case, the court was free to believe George's version of events and to disbelieve Morse's, which it evidently did, and we are bound to defer to the court's factual findings.  *See Nash*, 339 S.W.3d at 509.  In pronouncing judgment, the circuit court acknowledged that "in every case there are always some inconsistencies in the witnesses' testimony.  There are always some unanswered questions and issues and to be sure this case is no different."  The court concluded, however, that, considering the evidence as a whole, "these inconsistencies and questions [had] no impact on the Court's determination of the fundamental questions in the case."

Viewing the evidence in the light most favorable to the verdict, as we must, there was sufficient evidence for the court to find, beyond a reasonable doubt, that Morse knowingly assaulted George by stabbing him, causing serious injury, and, thus, there was sufficient evidence to find him guilty of first-degree assault.  The circuit court did not err in overruling Morse's motion for judgment of acquittal.  We affirm the circuit court's judgment.

/s/ JAMES EDWARD WELSH
James Edward Welsh, Judge

All concur.

---

[6]A person acts recklessly "when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." § 562.016.4.  In contrast, one who acts "knowingly" is aware that his conduct is "practically certain" to cause a result.  *See* § 562.016.3.  "When recklessness suffices to establish a culpable mental state, it is also established if a person acts purposely or knowingly." § 562.021.4.